SIMON, Justice.
 

 This is a redhibitory action in which the plaintiff seeks to rescind the sale from the defendant, on April 16, 1957, of a new 1957 model air-conditioned Plymouth automobile purchased by the plaintiff for the price of $3,051.83 for the primary purpose of allowing him increased travel, comfort and convenience in his livelihood of a traveling salesman. Plaintiff alleges in substance that, notwithstanding that the car was expressly warranted against vices and defects, it began to exhibit mechanical failures less than a month after his purchase,
 
 *985
 
 ■and that during the period May 13, 1957, to July 27, 1957, the entire engine and the generator had to be successively replaced; the voltage regulator burned out and was replaced; the self-starter rusted through and was replaced; the gas tank was dismantled and repaired due to leakage; the windshield fogged whenever the air-conditioning unit was in use; and the rear end or differential emitted a loud and irritating grinding noise and was also dismantled and replaced. He further avers that he complained to the defendant as soon as the defects manifested themselves; that he repeatedly expressed his dissatisfaction to defendant over many months during which defendant and his mechanics unsuccessfully attempted to remedy these unacceptable vices and defects; that he unsuccessfully offered to return the car to defendant on numerous occasions beginning with the first breakdown; and that he repeatedly expressed his dissatisfaction with these mechanical failures. That though the defendant and his mechanics partly remedied the defects, these remedial measures were followed by successive breakdowns until on July 29, 1957, he formally tendered the car as being unfit for the use and purpose intended.
 

 The defendant denied the plaintiff’s charges. It alleged that the automobile was delivered in good mechanical condition ; that subsequently, in compliance with ■ the warranty given plaintiff, it did perform certain adjustments and repairs to the automobile as it alleges are customarily incident to a new car, but that the car at no time exhibited such mechanical defects or faults as would justify the recognition of this action.
 

 There was judgment in favor of plaintiff in the sum of $3,051.83, plus legal interest and costs, and it was further ordered that upon payment thereof the plaintiff shall surrender and deliver the automobile to defendant. From this judgment defendant has appealed.
 

 The defendant maintains that the automobile was not below standard. Defendant’s president, who has been in the automobile dealer’s business for thirty years, testified that it was not unusual for a new automobile to exhibit the defects complained of. Furthermore, defendant’s mechanics testified that all these defects were rectified and that on the date suit was instituted the car was in perfect running condition.
 

 Article 2520 of the LSA-Civil Code defines a redhibition to be the avoidance of a sale “on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice.” Hence, the sole issue posed for our determination is whether the automobile exhibited such imperfections which rendered its use so in
 
 *987
 
 convenient that, had the plaintiff known of them, he would not have bought it.
 

 A study of the record convinces us. that shortly after the car was purchased by plaintiff it was in such a constant and recurring imperfect mechanical condition that plaintiff would not have purchased it had he known of its vices. The evidence reveals that on May 13, 1957, less than one month after its purchase, plaintiff returned the automobile to the dealer for correction of a constant grinding noise and hum in the transmission and the differential. On May 25th the front door had to be realigned. On June 2, 1957, while plaintiff was on a trip to Mississippi, the engine froze and the automobile had to be towed thirty miles to Greenwood, Mississippi, and left there for a week, during which time a complete new engine was installed. On June 12th plaintiff returned to pick up his car and, while driving back to New Orleans, he was compelled to stop over in McComb, Mississippi, to have the generator rebuilt. On June 13th, when plaintiff returned the car to the defendant, the generator again had to be repaired, the voltage regulator had to be replaced and the self-starter had to be rebuilt. Later that same afternoon, a new generator had to be installed. On June 18th the self-starter had to be re-worked. On numerous occasions later during the month of June the plaintiff made complaints about the factory installed air-conditioner, the timing, and the constant hum in the rear end. On July 3rd the' gas gauge was replaced. On- July 17th a leak in the gas 'tank made necessary its removal and repair. On July 22nd the gas tank had to be properly remounted. On July 27th the entire rear end had to be dismantled and replaced. Plaintiff testified that on September 10th, while he was on a trip to Biloxi, Mississippi, the generator again burned out and had to be repaired temporarily, a new one not being obtainable in Biloxi, thus depriving him of the use of the air-conditioner. On his return to New Orleans the generator was again replaced. On November 16th the left front door had to be aligned as it could not be opened. On February 10, 1958, modifications had to be made to the air-conditioner. Defendant has at no time intimated that these recurring mechanical failures were attributable to the fault, negligence or want of care of plaintiff.
 

 When purchasing the automobile, plaintiff dealt with the sales manager of defendant, informing him that his most important reason for the purchase was to use the car in connection with his business which required him to travel throughout several states, and that he desired an air-conditioned car during the long, hot summer months. It appears that due to the wide territory required to be covered, plaintiff traveled approximately 25,000 miles during the year prior to the purchase. During that year, aside from daily trips, he made seventeen automobile trips overnight or longer, and
 
 *989
 
 eight air trips overnight or longer. After .the purchase of the automobile, which he. had hoped would allow him to conduct more business by increasing his contacts with regular and prospective customers, he was compelled to travel fourteen times by air for overnight trips, and was able to -travel only eight times by automobile. Instead of being able to increase his automobile mileage up to 35,000 miles per year as -he had intended to do with the use of a new air-conditioned car, he was able to travel less than 14,000.
 

 Defendant admits the defects complained of by the plaintiff, but contends 'that it has complied with the terms of its express warranty by making good, at no 'expense to plaintiff, all adjustments and replacements necessary to place the car in perfect running condition. Apart from any express warranty, a purchaser of an automobile is entitled to a vehicle which will meet his needs and as is commonly known, a car which will not run or which • runs intermittently requiring the frequent attention of a mechanic to keep it going is an abomination and is manifestly not fit or acceptable for the purposes intended. See Crawford v. Abbott Automobile Co., 157 La. 59, 101 So. 871; Jackson v. Breard - Motor Co., 167 La. 857, 120 So. 478, and Reech v. Coco, 223 La. 346, 65 Sp.2d 790, - 791. In the present case the car was so ' “inconvenient and imperfect,” that it could • not be supposed that defendant would have purchased it, had he known of its defects or vices. Roby Motors Co. v. Harrison, 2 Cir., 19 La.App. 659, 139 So. 686.
 

 Defendant contends that a decree of recission is not proper because plaintiff had "driven the car nearly 14,000 miles at the time of the trial and accordingly was unable to return it in substantially the same condition as when sold. We -concede that to rescind the sale a purchaser must seek to restore the status quo as equally near as possible. It is also recognizable that, after learning of the vice of which he complains, he must offer within a reasonable time to return the purchased article. Tucker v. Central Motors, Inc., 220 La. 510, 57 So.2d 40.
 

 In the instant case plaintiff offered to return the automobile on numerous occasions beginning with the first serious breakdown, these tenders, including the formal tender of July 29, 1957, being refused by defendant. On each such occasion defendant assured plaintiff that the defects would be corrected. Finally, after several moifths of disillusionment and utter disgust, and on realizing that the automobile would never be fit for the purpose for which it had been purchased, on July 29, 1957, he again tendered the car which was again refused, whereupon suit followed.
 

 We are fully convinced that the use of this car was so inconvenient and imperfect as to justify a recission of the sale. Ob
 
 *991
 
 viously, having purchased this car to meet specific' needs and a desirable increase in the volume of his business, its defects, imperfections and successive mechanical failures requiring almost constant replacements, changes and repairs became a malignant and oppressive burden, the relief from which is to be found in the redhibitory action. Reech v. Coco, supra.
 

 For the reasons assigned the judgment appealed from is affirmed.